**J. Ashlee Albies**, OSB No. 051846
Email: ashlee@albiesstark.com
**Maya Rinta**, OSB No. 195058
Email: maya@albiesstark.com
Albies & Stark LLC
1 SW Columbia St. Suite 1850
Portland, Oregon 97204
Telephone: (503) 308-4770

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JEAN COPPEDGE**, an individual,<br><br>　　Plaintiff,<br><br>　　v.<br><br>**CITY OF HILLSBORO**, a municipal corporation, **JAMES SCHOEFFLER** in his individual capacity, and **CLINT CHRZ** in his individual capacity,<br><br>　　　　　　Defendants. | Case No. 3:21-cv-00146-YY<br><br>**THIRD AMENDED COMPLAINT**<br><br>(Public Accommodations Violations - ORS § 659A.403; Disability Discrimination - ORS § 659A.142(4)-(5); Negligence; 42 USC §1983 (Fourteenth Amendment – State-Created Danger)<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.

This is a civil rights action. Plaintiff Jean Coppedge, an elderly African American

woman, called the Hillsboro Police Department (HPD) after being physically assaulted

and called racist slurs by her neighbors. In response, HPD officers conducted a sham

investigation; questioned her credibility and mental health; biased potential witnesses and suspects by suggesting to them that she was mentally ill; intentionally omitted admissions and corroborating statements, including from the very individuals whom Ms. Coppedge identified as her assailants; and advised her neighbors on how to obtain her eviction through use of police reports. As a result, Ms. Coppedge's landlord evicted her from her home and Ms. Coppedge suffered both economic and emotional harm. Despite her complaints to HPD and the existence of body camera footage corroborating her story—body camera footage the reporting officer initially denied having—HPD told Ms. Coppedge that it had no concerns about the officers' conduct.

2.

Plaintiff, Jean Coppedge (hereinafter "Coppedge" or "plaintiff"), is, and at all material times hereto was, a resident of Washington County, State of Oregon. Ms. Coppedge is a 70-year-old African American woman.

3.

Defendant City of Hillsboro ("City" or "defendant") is and at all material times hereto has been a municipal corporation in the State of Oregon.

4.

The Hillsboro Police Department ("HPD"), a department of the City, is the law enforcement agency of the City. Its mission statement is to "deliver[] exceptional police service to the Hillsboro community through our shared values of **Dignity, Respect, Service,** and **Just Outcomes**." *See* Hillsboro Oregon, Police Department, *Our Mission*, https://www.hillsboro-oregon.gov/our-city/departments/police (emphasis original). Hillsboro Police Chief Jim Coleman states that HPD's goal "is to build bridges between

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

[the] department and historically underserved and underrepresented populations within our community." *Id.*

5.

Defendant James Schoeffler (hereinafter "Schoeffler" or "defendant) is or was at all material times an HPD officer, an individual, and is sued in his individual capacity.

6.

Defendant Clint Chrz (hereinafter "Chrz" or "defendant) is or was at all material times an HPD officer, an individual, and is sued in his individual capacity.

7.

Coppedge is a 70-year-old African American woman. Her neighbor, Kenneth McConnell, Jr. is a tall, heavy white man and construction worker who regularly verbally harassed Ms. Coppedge and brought his dog to her home to urinate and defecate on her lawn despite her repeated request that he not do so.

8.

On or about May 22, 2019, Mr. McConnell brought his dog to Ms. Coppedge's home and allowed the dog to evacuate on her lawn while his adult daughter Brittany McConnell watched from the sidewalk laughing. When Ms. Coppedge asked them and their dog to leave, Mr. McConnell called her a racial slur for African Americans [the n-word], a "bitch" and "motherfucker" ("the incident").

9.

Ms. Coppedge used her walking stick to point in the direction of the dog as she told Mr. McConnell to leave. Ms. McConnell screamed not to strike the dog, even though Ms. Coppedge did not intend to do so, made no attempt to do so, and was not capable of

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

doing so. Ms. McConnell grabbed Ms. Coppedge, pushed her, and wrestled the walking stick away from her. Ms. McConnell's assault caused scratches to Ms. Coppedge's arm and almost knocked her to the ground. Ms. McConnell then threw Ms. Coppedge's walking stick into the street, and then the McConnells left.

10.

In response, Ms. Coppedge called HPD's non-emergency number to report the incident and assault, and HPD Officer James Schoeffler responded. Officer Schoeffler had a body camera which recorded footage of his interactions with Ms. Coppedge, the McConnells, and other witnesses interviewed during the investigation. Throughout the day, Schoefler consistently told individuals with whom he interacted that they were being recorded.

11.

When Officer Schoeffler first interviewed Ms. Coppedge, Ms. Coppedge informed him that Mr. McConnell and the adults who lived with him had been persistently harassing her, that every time he goes by her house he yells "[n-word]" at her and calls her names, and recounted the events of that day. Despite her alarming reports, Officer Schoeffler condescendingly responded to Ms. Coppedge with disbelief and series of harassing questions. Schoeffler further commented to Ms. Coppedge that "we used to deal with the same issue" at a prior residence, alleging she complained about "every single neighbor you [Ms. Coppedge] had." *See* COPPEDGE_0018 Ex. A. Schoeffler Video Redacted ("Schoeffler Video A") at 0:02:40 – 0:03:31.

/ / /

/ / /

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

12.

Despite Officer Schoeffler's disrespectful, condescending, and skeptical comments and questioning of Ms. Coppedge, Ms. Coppedge clearly reported that she did not hit the dog or the McConnells with her walking stick, and that Ms. McConnell grabbed her, wrestled her walking stick away from her and threw it in the street. Ms. Coppedge also showed Officer Schoeffler the injuries on her arm from the assault.

13.

Officer Schoeffler then interviewed Mr. McConnell and Ms. McConnell. He interviewed them in their home at the same time, thus ensuring they would hear each other's narratives and verify and vouch for each other. In the interview, among other things, the body camera footage captures Mr. McConnell admitting to Officer Schoeffler that he regularly harassed and antagonized Ms. Coppedge (e.g., by calling her the n word and calling her a "crazy bitch" "every time I see her"), and Ms. McConnell admitted to grabbing Ms. Coppedge's walking stick, wrestling the walking stick away and throwing it into the street. Mr. McConnell also admitted that he had called Ms. Coppedge the [n-word] previously. *See* Schoeffler Video A at 0:29:47 – 0:45:00.

14.

Officer Schoeffler's treatment of the McConnells was notably different than his treatment of Ms. Coppedge. He remained respectful and sympathetic to the McConnells and did not question them extensively—even when the McConnells made statements and admissions about assault and prior racial harassment. Instead, Officer Schoeffler reassured the McConnells he was not going to take the matter seriously and that he did not believe Ms. Coppedege because she was mentally ill, stating: "I'm very familiar with

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

Jean and her issues"; that there were "lots and lots of calls" to her previous residence; "we've arrested her [Ms. Coppedge] before"; that he was going to "forward [the matter] to our mental health team."  Officer Schoeffler left the McConnells with the advice that, if anything happened in the future, the McConnells should "just call us, and we'll deal with it. Your tax dollars pay for us to deal with problems so you don't have to." *See* Schoeffler Video A at 0:50:15 – 0:59:10. Officer Schoeffler made no such reassurances to Ms. Coppedge.

15.

During the interview, the McConnells accused Ms. Coppedge of initiating the assault and accused her of assaulting Ms. McConnell. The McConnells are significantly taller, heavier, younger, and stronger than Ms. Coppedge. The McConnells work in the construction industry. Ms. Coppedge is a retired purchasing manager who worked in the high-tech industry. The McConnells went to Ms. Coppedge's home and were on her front lawn when the incident occurred. It is simply implausible that Ms. Coppedge was a physical threat to the McConnells or their dog in any way.

16.

After his interview with the McConnells, Officer Schoeffler went back to Ms. Coppedge and engaged in yet another disrespectful and condescending interaction. For example:

a.  When Ms. Coppedge expressed concern about Officer Schoeffler interviewing her neighbors on matters unrelated to her call, Officer Schoeffler became frustrated, saying, "Jean, Jean, I don't know why you constantly have problems with everywhere you go with your neighbors. Everywhere you go";

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

b.  Officer Schoeffler said, "When you lived at [previous residence], we were at your house at least once a week." Ms. Coppedge denied that she had contact with law enforcement that frequently, and said she has a right to ask people not to allow their dogs to evacuate on her lawn. Officer Schoeffler responded, "Yeah, but […] it's like, constantly, constantly always you, always with your neighbors";

c.  Officer Schoeffler agreed Ms. Coppedge has a right to ask people not to allow their dogs to evacuate on her lawn, but claimed, "Everybody that I talked to said, every time they come outside, you're outside pretending to film them, pretending to talk to somebody on the phone about them." On the contrary, only one set of neighbors made this claim, which was irrelevant to whether Ms. Coppedge was assaulted by the McConnells on May 22, 2019.

Obviously aware that he had offended Ms. Coppedge, Officer Schoeffler stated, "If you're not satisfied with the service, I can have a Sergeant here to talk to you." Ms. Coppedge agreed and Schoeffler requested HPD Sergeant Clint Chrz to respond to the call.

17.

Soon after, Sgt. Chrz arrived on scene. When met with Officer Schoeffler, both he and Schoeffler disabled the audio on their body cameras while speaking together.

18.

Schoeffler and Chrz then proceeded to interview Brooklyn Bryant and Robert Bryant, some of Ms. Coppedge's neighbors who were not involved in the incident. Officer Schoeffler told the Bryants, "I know Jean very well," biasing them against Ms. Coppedge. The Bryants voiced concerns they had with Ms. Coppedge unrelated to Ms.

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

Coppedge's call about racial harassment and assault. Although the Bryants did not witness the incident, they complained about Ms. Coppedge being a renter, and told Chrz and Schoeffler that they had an attorney but the landlord would not evict her until "there's a police report." Both Schoeffler and Chrz made additional prejudicial comments to the Bryants about Ms. Coppedge, including that Ms. Coppedge had "mental issues."

19.

During the course of the conversation with the Bryants, Sergeant Chrz advised the Bryants on how to evict Ms. Coppedge and how to obtain police reports about Ms. Coppedge, explaining that every police report is a public record, except if there is an "ongoing investigation," implying that there would be no ongoing investigation of the assault of Ms. Coppedge on May 22, 2019. Specifically, Sgt. Chrz told the Bryants, "The only way you're going to – the landlord is going to get her [Ms. Coppedge] out of here is if you guys have your friend, the attorney, write a letter." *See* Schoeffler Video A at 1:32:00 – 1:47:24. Ms. Bryant specifically told Schoefler and Chrz, "I'm hoping another incident happens so maybe another police report can get signed." *Id.* Shortly after, Ms. Bryant and Officer Chrz had the following conversation:

> Bryant:    What information can we get, like, police report-wise or higher?
> Chrz:        So what you can do – all calls that are called in are public record. So, you can do a couple things. Number one: our dispatch center. It's Washington County […] if you have her name or address.
> Bryant:    We don't know her last name.
> Chrz:        Or an address – 3459 [Ms. Coppedge's address.] You can request all the calls for that. The other thing is that you can call the Hillsboro Police Department of the public records department and say, hey, I need to get any—because any police report that's written is public information. You can say, I have, you know, this address. And you know, Officer Schoeffler will give you her last name, I'm make sure he

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

gives you that, ok. And say, hey, I have this address, this name – I
want all the police reports with those.
[…]

Bryant:    I think that's all. Just this and the police reports, because I'm going to
give those to my attorney.

Chrz:      Perfect. Get those.

*See* COPPEDGE_0021 Ex. D – Chrz Video 2 ("Chrz Video") at 0:02:00 – 0:04:01.

Despite this interaction, Sgt. Chrz later denied knowing why the Bryants wanted copies

of police reports.

20.

Officer Schoeffler's and Sgt. Chrz's demeanor towards Ms. Coppedge's adversarial

neighbors was markedly different and more positive than how they treated Ms.

Coppedge. In addition, Officer Schoeffler consistently told Ms. Coppedge's neighbors

she had mental health issues, and conveyed to the neighbors that he would try to

involve "mental health officers" to deal with Ms. Coppedge. Moreover, Officer Schoeffler

told every witness and suspect that he knew Ms. Coppedge "very well", and stated or

suggested that she lied, and/or that she is mentally ill and therefore not credible.

21.

Ms. Coppedge is Black, while none of the neighbors, police officers, or witnesses

were Black.

22.

After Schoeffler and Chrz conducted the witness interviews, Sgt. Chrz went to speak to

Ms. Coppedge. Ms. Coppedge informed Sgt. Chrz she was concerned about Officer

Schoeffler telling her neighbors that he knows her very well based on purported prior

interactions and that she was concerned about why Sgt. Chrz would tell Ms. Bryant

about how to request police reports. Sgt. Chrz told Ms. Coppedge that he was unaware

PAGE - 9      THIRD AMENDED COMPLAINT

of what Officer Schoeffler said, despite being there to witness some of these comments and making them himself. Chrz went on to tell Coppedge police reports are public records and the information inside them is therefore not "personal information." This response evaded the issue raised by Ms. Coppedge. Sgt. Chrz did not address Ms. Coppedge's concerns that Officer Schoeffler prejudiced the statements of witnesses and suspects by implying that he knew her from purported prior encounters, that Ms. Coppedge was lying in this instance or that she is generally not credible. Ms. Coppedge also described the assault by the McConnells in detail for Sergeant Chrz.

23.

Specifically, when Ms. Coppedge expressed her frustration with how Officer Schoeffler told neighbors that he knows Ms. Coppedge well based on purported prior encounters, Ms. Coppedge reported her concerns that the McConnells act like they can say anything to her, no matter how abusive, because she lives by herself and nobody will intervene to help.

24.

Sergeant Chrz affirmed that Ms. Coppedge has a right to ask people not to allow their dogs to evacuate on her lawn. Ms. Coppedge explained that she did not call HPD to complain about dogs—the real problem was how the McConnells assaulted her. She complained that if she had done to the McConnells what they did to her, then HPD would have already taken her to jail (noting "I'm sorry to say this").

/ / /

/ / /

/ / /

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

25.

Sergeant Chrz ended the interview to go talk with Officer Schoeffler, however, there is no body camera footage of this conversation, and it is not described in the written report.

26.

Officer Schoeffler then authored a sham police report. In his police report, Officer Schoeffler documented the negative statements about Ms. Coppedge he had solicited from every witness and suspect and emphasized them in his report narrative. Officer Schoeffler disregarded the McConnells's admissions of wrongdoing and instead concluded that Ms. Coppedge "exaggerated her interaction with her neighbors and their dog." He wrote that Ms. Coppedge fabricated the assault and she inflicted the injuries to herself.

27.

Schoeffler's report also omitted or misstated many statements and admissions that suggested the McConnells were the primary aggressors and Ms. Coppedge's report was credible, such as:

a.  Mr. McConnell's statements admitting he has previously harassed Ms. Coppedge, including his statement that "I call her a crazy bitch every time I see her" and that he stopped in front of Ms. Coppedge's home earlier that day "because she was on the porch";

b.  Mr. McConnell's fantasizing about "crack[ing] her [Ms. Coppedge] upside the head";

PAGE - 11        THIRD AMENDED COMPLAINT

   c.  Mr. McConnell's admissions that in addition to calling her the [n-word] previously, he had racially harassed Ms. Coppedge on other occasions such as calling her a "crazy fucking do-rag bitch";

   d.  Mr. McConnell's outright refusal to avoid conflict with Ms. Coppedge and explicit threat that he might "crack[] her upside the head";

   e.  Ms. McConnell's admission that she wrestled the walking stick from Ms. Coppedge and threw it into the street; and;

   f.  Two separate witness's statements that they heard Mr. McConnell call Ms. Coppedge a "bitch" the night before and they had heard Mr. McConnell harass Ms. Coppedge before.

28.

As a result of Schoeffler's sham police report, Ms. Coppedge's landlord evicted her from her home, and Ms. Coppedge suffered economic damages, as well as emotional distress and humiliation.

29.

Ms. Coppedge obtained a copy of Schoeffler's police report and renewed her complaint to HPD about the investigation. She arranged to discuss her complaint with HPD Commander Scott Hewetson.

30.

On June 20, 2019, Officer Schoeffler supplemented his written report to correct the misidentification of a witness, and to certify that there was no body camera footage related to this incident because the body camera was "Turned Off." Schoeffler's report that the body camera footage was "Turned Off" was also an intentional lie—as

PAGE - 12        THIRD AMENDED COMPLAINT

described above, Schoeffler alerted numerous people throughout the day that they were being recorded.

31.

On June 21, 2019, Ms. Coppedge met with HPD Commander Scott Hewetson to explain her concerns.

32.

By letter dated June 26, 2019, Commander Hewetson informed Ms. Coppedge that he viewed all the body camera footage, and believed Officer Schoeffler's documentation was accurate, that Schoeffler wrote an accurate summation of what he was told by her neighbors, and that he had no concerns about the contents of the incident report or the body camera footage.

33.

Upon information and belief, HPD officers did not address, arrest, report, or recommend any legal action against Mr. McConnell or Ms. McConnell with regard to their conduct against Ms. Coppedge.

34.

Upon information and belief, Hewetson and Defendant City failed to open an investigation into Schoeffler's or Chrz's conduct, and did not provide any training or discipline with regard to their above-described conduct.

35.

Notice of this claim was properly given to the City of Hillsboro within 180 days of the date of the events that give rise to this lawsuit.

/ / /

PAGE - 13      THIRD AMENDED COMPLAINT

## FIRST CLAIM FOR RELIEF
### (Violation of Discrimination in Public Accommodations – ORS § 659A.403)
### (Against Defendant City of Hillsboro)

36.

Plaintiff realleges and incorporates by reference the above paragraphs.

37.

Defendant provides services as defined under ORS § 659A.400 (1)(c) and is subject to

the prohibition on discrimination in public accommodations under ORS § 659A.403.

38.

Defendant discriminated against plaintiff in providing a service based on her race.

39.

As a result of the above-described conduct, defendant caused plaintiff to suffer

emotional distress (garden variety, not medical) and economic loss in an amount to be

determined by a jury not to exceed $600,000.

40.

Plaintiff is entitled to reasonable attorney fees pursuant to ORS § 659A.885 and ORS

§20.107.

## SECOND CLAIM FOR RELIEF
### (Disability Discrimination – ORS § 659A.142(4)-(5))
### (Against Defendant City of Hillsboro)

41.

Plaintiff realleges and incorporates by reference the above paragraphs.

42.

Defendant regarded plaintiff to have a mental impairment that substantially limits one or

more major life activities by stating that "there's some mental issues" with plaintiff;

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

baselessly accusing plaintiff of "exaggerat[ing]" her complaints; disbelieving plaintiff's credible complaints; stating or suggesting plaintiff was not credible because she was mentally ill; baselessly assuming plaintiff inflicted injuries to herself; and intentionally obtaining her eviction from her home.

43.

Defendant through the HPD provides police services. As a member of the public and a Hillsboro resident, plaintiff was entitled to receive the benefit of Defendant's services.

44.

As described above, Defendant discriminated against plaintiff based on her perceived disability by intentionally omitting statements from police reports that supported plaintiff's complaints; failing to take seriously plaintiff's reports about racially-prejudiced assault; and failing to adequately investigate, report, and address plaintiff's complaint; and generating a biased and false police report to get plaintiff evicted from her housing.

45.

As a result of the above-described conduct, Defendant caused plaintiff to suffer emotional distress (garden variety, not medical) and economic loss in an amount to be determined by a jury not to exceed $600,000.

46.

Plaintiff is entitled to reasonable attorney fees pursuant to ORS § 659A.885 and ORS § 20.107.

/ / /

/ / /

/ / /

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

### THIRD CLAIM FOR RELIEF
### (Negligence)
### (Against Defendant City of Hillsboro)

### Count 1

### 47.

Plaintiff realleges and incorporates by reference the above paragraphs.

### 48.

HPD promulgates policies for its officers to follow, and gives notice to the public of these policies on their website. These policies state HPD's commitment and values, including its commitment to "provide police services and to enforce the law equally, fairly, and without discrimination toward any individual or group." HPD Policy 1011 Profiling and Unbiased Policing. HPD policy specifically prohibits officers from "providing differing levels of police service or enforcement of the law" based on categories such as that race, ethnicity, sex, economic status, age, disability, or a person's "affiliation" with such groups. *Id.* HPD policy further directs officers to perform their duties free from racial profiling or bias, and "in a fair, consistent, and objective manner[.]" *Id.*

### 49.

HPD also promulgates specific policy and protocol for "any act motivated by hatred or prejudice" and ensures that HPD will address such acts "on a priority basis and use every necessary legal resource to rapidly and identify the suspects and bring them to justice." HPD Policy 528 Crimes or Incidents Motivated by Hatred or Prejudice. Among other things, HPD's policy mandates that an officer who "becomes aware of a crime or incident motivated by hatred or prejudice" investigate that crime or incident in a timely manner and report it to a supervisor. *Id.*

PAGE - 16      THIRD AMENDED COMPLAINT

50.

Upon information and belief, HPD additionally promulgates specific policy, protocol, and training regarding how officers are to conduct investigations and write police reports. Upon information and belief, officers are required to write truthful and accurate reports.

51.

Defendant knew or should have known that plaintiff reported an incident of motivated by racial prejudice and reported an assault worthy of adequate investigation and action because Mr. McConnell admitted to calling plaintiff [the n-word] and "bitch"; Mr. McConnell admitted to racially harassing Plaintiff on previous occasions, Ms. McConnell admitted to grabbing plaintiff's walking stick, wrestling her walking stick away and throwing it; Mr. McConnell stated, "I call her [plaintiff] a crazy bitch every time I see her"; Mr. McConnell  threatened that he might "crack[] her [plaintiff] upside the head"; and plaintiff had visible injuries. Defendant knew or should have known that Officer Schoeffler's reports were false and/or misleading because Officer Schoeffler's report was contradicted by the video evidence, Schoeffler omitted aggressive and threatening statements and admissions made by the McConnells, he omitted corroborating statements from other witnesses, and because the report contained uncorroborated information such as plaintiff self-inflicted her injuries.

52.

Defendant breached its duty owed to plaintiff, as defined by HPD policy, by failing to follow the policies.

/ / /

/ / /

PAGE - 17    THIRD AMENDED COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

53.

Defendant's conduct unreasonably created a foreseeable risk of harm to a protected interest of the kind of harm that befell Plaintiff. Defendant knew or should have known that its failure to properly follow HPD policies and that generating a false and misleading police report about plaintiff would risk plaintiff being evicted from her housing and suffer emotional distress and economic loss.

54.

Defendant's conduct was unreasonable in light of the risk and caused plaintiff's harm.

55.

Plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made Defendant's conduct negligent.

56.

Plaintiff is entitled to costs and attorneys' fees pursuant to ORS § 20.107.

57.

**Count 2 – Negligent Training and Discipline**

Defendant breached its duty owed to plaintiff as defined by HPD policies by failing to adequately train and failing to discipline officers who: (1) fail to investigate incidents motivated by racial prejudice; (2) engage in discriminatory treatment, including providing different and levels of police service on the basis of race and disability or perceived disability. Defendant knew or should have known that in prior incidents where officers engaged in the aforementioned conduct, Defendant failed to adequately discipline or train such officers, despite knowing that adequate discipline or training would make officers less likely to fail to investigate incidents motivated by racial prejudice and less

PAGE - 18      THIRD AMENDED COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

likely to engage in discriminatory treatment of members of the public on the basis of race and/or perceived disability.

58.

Defendant's conduct unreasonably created a foreseeable risk of harm to a protected interest of the kind of harm that befell Plaintiff. Defendant knew or should have known that its failure to adequately train or discipline officers would risk plaintiff being evicted from her housing and suffer emotional distress, economic loss, discomfort, fear, frustration, and humiliation.

59.

Defendant's conduct was unreasonable in light of the risk and caused plaintiff's harm.

60.

Plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made Defendant's conduct negligent.

61.

Plaintiff is entitled to costs and attorneys' fees pursuant to ORS § 20.107.

**FOURTH CLAIM FOR RELIEF**
**(43 USC §1983 – Fourteenth Amendment – State-Created Danger)**

62.

Plaintiff realleges and incorporates by reference the above paragraphs.

63.

Plaintiff has the right to be free from government interference with her life and liberty. Her ability to live in her home, to move freely on the streets, to protect herself from violent and threatening neighbors, to complain about racially discriminatory behavior, to complain of being assaulted, and her right to be free from bodily harm and unnecessary

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

pain are liberty interests protected by the Fourteenth Amendment to the United States Constitution. Plaintiff is entitled to due process of law in the removal or interference with these rights. Defendants' actions deprived Ms. Coppedge of her protected liberty interests as well as the right of fair and just process prior to depriving her of these liberty interests in violation of the Fourteenth Amendment.

64.

Adequate housing is a human right recognized by international law. *See* Universal Declaration of Human Rights, article 25(1); International Covenant on Economic, Social, and Cultural Rights. Housing is a basic and essential need, which is repeatedly affirmed and protected through federal and state laws such as Title VIII of the Civil Rights Act of 1968, Oregon landlord tenant law, and Oregon's current eviction moratorium.

65.

**Count 1: Individual Liability Against Defendant Schoeffler**

Defendants Schoeffler was acting under the color of law at all material times herein.

66.

Defendant's conduct violated Ms. Coppedge's protected Constitutional rights of liberty and due process in the following ways:

a. By writing and submitting a police report which is contradicted by the video evidence, admissions and statements of witnesses, and the forensic facts, with the intention to wrongfully assist in evicting Ms. Coppedge and to subject her to danger and heightened risk of further assaults and racist harassment;

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

b.  By providing false and misleading information in official reports concerning the nature of the incident, the admissions made by the McConnells, witness statements, and the evidence of the nature of the assault;

c.  By disengaging body-worn cameras to avoid or suppress evidence of Defendants' statements to witnesses; witness statements and admissions including the McConnells' admissions of racially harassing and assaulting Ms. Coppedge;

d.  By telling neighbors, witnesses, and Ms. Coppedge's alleged assailants that he did not find her report credible due to her mental disability;

e.  By denying existence of body camera footage to Ms. Coppedge in response to her protected complaint about Defendants' conduct;

f.  By falsifying or omitting the existence of material helpful to Ms. Coppedge or corroborative of her complaints;

g.  By failing to protect Ms. Coppedge from aggressive, assaultive, racially discriminatory neighbors;

h.  By placing Ms. Coppedge in increased risk and danger of further assaults and racist harassment from the McConnells;

i.  By placing Ms. Coppedge in increased risk and danger of eviction and intentionally getting Ms. Coppedge evicted from her home.

67.

By engaging in the above-described conduct, Defendant knowingly and affirmatively created and exposed Ms. Coppedge to danger which she would not have otherwise

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

faced, and left her worse than it found her. Defendant acted with deliberate indifference to that danger and Ms. Coppedge's interests protected by the Fourteenth Amendment. Defendant's conduct was arbitrary, shocked the conscience, and interfered with the rights implicit in the concept of ordered liberty.

68.

It is clearly established law that a law enforcement officer violates a person's Fourteenth Amendment rights by placing that person in a known danger with deliberate indifference to her personal physical safety.

69.

The above-described conduct was a proximate cause of harm to Ms. Coppedge. Defendant's illegal and unconstitutional conduct caused Ms. Coppedge to lose her housing, be retaliated against by her neighbors, subjected her to increased risk of harm of being assaulted and racially harassed again by the McConnells, and emotional distress (garden variety, not medical) in an amount to be determined at trial.

70.

Ms. Coppedge is entitled to reasonable attorneys fees and costs pursuant to 42 USC § 1988.

71.

**Count 2: Individual Liability Against Defendant Chrz**

Defendant Chrz was acting under the color of law at all material times herein.

72.

Defendant's conduct violated Ms. Coppedge's protected Constitutional rights of liberty and due process in the following ways:

PAGE - 22      THIRD AMENDED COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

a. By advising and assisting Brooklyn Bryant and Robert Bryant to promote a false story about Ms. Coppedge in order get Ms. Coppedge evicted and subject her to danger and increased risk of further assaults and racist harassment;

b. By advising and assisting Brooklyn Bryant and Robert Bryant on how to obtain the police reports, including Defendants' false police report, in order to evict Ms. Coppedge;

c. By disengaging body-worn cameras to avoid or suppress evidence of Defendants' statements to witnesses; witness statements and admissions including the McConnells' admissions of racially harassing and assaulting Ms. Coppedge;

d. By telling neighbors, witnesses, and Ms. Coppedge's alleged assailants that he did not find her report credible due to her mental disability;

e. By failing to properly supervise Schoeffler and condoning or actively assisting Schoeffler's unconstitutional conduct;

f. By failing to protect Ms. Coppedge from aggressive, assaultive, racially discriminatory neighbors;

g. By placing Ms. Coppedge in increased risk and danger of further assaults and racist harassment from the McConnells;

h. By placing Ms. Coppedge in increased risk and danger of eviction and intentionally getting Ms. Coppedge evicted from her home.

/ / /

PAGE - 23      THIRD AMENDED COMPLAINT

73.

By engaging in the above-described conduct, Defendant knowingly and affirmatively created and exposed Ms. Coppedge to danger which she would not have otherwise faced, and left her worse than it found her. Defendant acted with deliberate indifference to that danger and Ms. Coppedge's interests protected by the Fourteenth Amendment. Defendant's conduct was arbitrary, shocked the conscience, and interfered with the rights implicit in the concept of ordered liberty.

74.

It is clearly established law that a law enforcement officer violates a person's Fourteenth Amendment rights by placing that person in a known danger with deliberate indifference to her personal physical safety.

75.

The above-described conduct was a proximate cause of harm to Ms. Coppedge. Defendant's illegal and unconstitutional conduct caused Ms. Coppedge to lose her housing, be retaliated against by her neighbors, subjected her to increased risk of harm of being assaulted and racially harassed again by the McConnells, and emotional distress (garden variety, not medical) in an amount to be determined at trial.

76.

Ms. Coppedge is entitled to reasonable attorneys fees and costs pursuant to 42 USC § 1988.

/ / /

/ / /

/ / /

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

77.

**Count 3: Municipal Liability Against Defendant City of Hillsboro – Ratification**

The acts of Schoeffler and the acts of Chrz deprived Ms. Coppedge interests and due process rights protected by the Fourteenth Amendment to the United States Constitution.

78.

Defendant City ratified Schoeffler's above-described conduct and Chrz's above-described conduct, knew of and specifically made a deliberate choice to approve Schoeffler's acts and Chrz's acts and the basis for it, and/or knew or reasonably should have known this would lead to constitutional violations alleged herein.

79.

The above-described conduct was a proximate cause of harm to Ms. Coppedge. As a result of Defendants' unlawful actions, Ms. Coppedge suffered increased risk of being assaulted again by the McConnells, loss of her stable housing, and emotional distress (garden variety, not medical) amount to be determined at trial.

80.

Ms. Coppedge is entitled to reasonable attorneys fees and costs pursuant to 42 USC § 1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for her costs and disbursements incurred herein and for the following in accordance with the proof at trial:

1.    Economic damages,

2.    Non-Economic damages,

PAGE - 25        THIRD AMENDED COMPLAINT

2.      Prejudgment and post judgement interest as appropriate and allowed by law,

3.      On all claims, as applicable, amounts necessary to offset the income tax consequences of receiving a lump sum payment, rather than receiving payment of wages over the applicable time frame; and

4.      Any other relief the court deems proper.


**DATED** this 2nd day of July 2021.

s/ *Maya Rinta*
**Maya Rinta,** OSB No. 195058
**J. Ashlee Albies,** OSB No. 051848

*Attorneys for Plaintiff*

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST. SUITE 1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292