**J. Ashlee Albies**, OSB No. 051846
Email: ashlee@albiesstark.com
**Maya Rinta**, OSB No. 195058
Email: maya@albiesstark.com
Albies & Stark LLC
1 SW Columbia St., Suite 1850
Portland, Oregon 97204
Telephone: (503) 308-4770
Facsimile: (503) 427-9292

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JEAN COPPEDGE,** an individual, | CASE NO. 3:21-cv-00146-YY |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT** |
| vs. | |
| **CITY OF HILLSBORO**, a municipality, **JAMES SCHOEFFLER** in his individual capacity, and **CLINT CHRZ** in his individual capacity**,** | |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

TABLE OF CONTENTS

INTRODUCTION..................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I. STATEMENT OF FACTS ................................................................................. 1

II. LEGAL STANDARDS .................................................................................... 5

III. ARGUMENT ................................................................................................. 6

A. Plaintiff's First Claim is Cognizable Under ORS § 659A.403...................... 6

    1. Oregon Statute Defines "Public Accommodation" as Any Service to the Public that is Provided by a Public Body ................................................ 6

    2. City of Hillsboro Police Department Services are Indeed a "Service".................... 7

    3. Non-Oregon Caselaw is Not Relevant to Whether Plaintiff Has Alleged a Claim Under ORS § 659A.403.................................................................... 8

    4. Plaintiff Alleged Sufficient Facts to Support Her First Claim Under ORS § 659A.403 Based on Race....................................................................10

B. Plaintiff Alleged Sufficient Facts For Her Second Claim Under ORS § 659A.142 .....13

    1. Plaintiff is Protected Because Defendants Regarded Her as Disabled.................13

    2. Plaintiff has Stated A Claim for Relief Under ORS § 659A.142 .............................14

C. Plaintiff's Third Claim for Negligence is Recognized by Oregon Law and Plaintiff has Pled Sufficient Facts for Both Counts.......................................................16

    1. Police can be liable for negligence in investigation ..............................................16

    2. Plaintiff Has Alleged Sufficient Facts to Recover for Emotional Distress Damages on her Negligence Claim ........................................................................19

D. Defendants Are Not Entitled to Absolute Privilege in this Case. ...............................21

E. Plaintiff Has Stated a Claim for Relief Under 42 U.S.C § 1983.................................22

IV. CONCLUSION ...........................................................................................23

PAGE i – PLAINITFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST, #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

TABLE OF AUTHORITIES

**Cases**

*Adams v. Or. State Police,* 289 Or 233 (1980)....................................................................17

*Am. Family Ass'n, Inc. v. City & County of San Francisco*, 277 F3d 1114 (9th Cir. 2002).....5

*Ashcroft v. Iqbal*, 556 US 662 (2009)................................................................................ 5

*Balistreri v. Pacifica Police* Dep't*, 901*, F 2d 696 (9th Cir 1988)........................................... 8

*Bell Atl. Corp. v. Twombly*, 550 US 544 (2007)................................................................... 5

*Bellikka v. Green*, 306 Or 630 (1988) ...............................................................................18

*Brewer v. Erwin,* 287 Or 435 (1979) ................................................................................21

*Conway v. Pacific University*, 324 Or 231 (1996)................................................................19

*Craig v. US Bancorp*, No. 03-1680-AA, 2004 Dist LEXIS 6987 (D Or Apr. 14, 2004)...........11

*Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 191 L. Ed. 2d 856

(2015) ...................................................................................................................... 7

*D.H. v. City of New York,* 309 F Supp 3d 52 (S.D.N.Y. 2018)...............................................10

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,* 489 US 189 (1989)............................... 8

*Edwards v. State*, 217 Or App 188 (2007) .........................................................................17

*Ford v. Ramirez-Palmer (Estate of Ford)*, 301 F3d 1043(9th Cir 2002)................................19

*Hammond v. Cent. Lane Commc'ns Ctr.*, 312 Or 17 (1991) ...........................................20, 21

*Harrington v. Airbnb, Inc.*, 348 F Supp 3d 1085 (D Or 2018) .........................................10, 11

*Harris v. McRae,* 448 U.S. 297 (1980)............................................................................... 8

*Harris v. Suniga*, 209 Or App 410 (2006)...........................................................................21

PAGE ii – PLAINITFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST, #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

*Hernandez v. Bernstein, No.* 3:17-cv-01654-JR, 2018 US Dist LEXIS 97551, (D Or Apr. 16, 2018) ...................................................................................................................23

*Hillsboro v. PSC*, 97 Or 320 (1920) ......................................................................15

*Jackson v. Olson*, 77 Or App 41 (1985)...............................................................17

*Kansas Comm'n on Civil Rights v. Howard,* 544 P 2d 791(1975) .......................................10

*King v. Greyhound Lines, Inc.*, 61 Or App 197 (1982) ..........................................11

*Klein v. Or Bureau of Labor & Indus.,* 289 Or App 507 (2017) .............................................11

*Leon v. Tillamook Cty. Sch. Dist.,* No. 3:17-440-PK, 2018 US Dist LEXIS 79674 (D Or May 11, 2018) ...................................................................................................................23

*Lookabill v. City of Vancouver,* 2015 U.S. Dist. LEXIS 101300, 2015 WL 4623938 (W.D. Wash Aug. 3, 2015) ........................................................................................... 9

*Marquard v. New Penn Fin., LLC*, No. 3:17-cv-549-SI, 2017 US Dist LEXIS 155209 (D Or Sep. 22, 2017) ...................................................................................................9, 14

*Moss v. U.S. Secret Service*, 572 F3d 962 (9th Cir. 2009)................................... 5

*Nearing v. Weaver,* 295 Or 702 (1983)................................................................20

*Newcal Indus., Inc. v. Ikon Office Solution,* 513 F3d 1038 (9th Cir 2008) ............................ 5

*Raynor v. City of Longview,*11 F3d 485 (9th Cir 1997) ......................................... 8

*Sande v. City of Portland*, 185 Or App 262 (2003)...............................................17

*Shaya v. Belcastro,* 2016 WL 3353921(E.D. Mich. June 10, 2016).....................................10

*Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211 (9th Cir. 2014)..........................7, 9

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035 (9th Cir. 2010) .................... 5

*State v. Lewis*, 352 Or 626 (2012) ...................................................................... 9

PAGE iii – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

*Sterling v. Albany*, 276 Or 403 (1976) .................................................................................18

*The Puff Factory, LLC v. Port of Cascade Locks,* No. 3:20-cv-65-SI, 2020 US Dist LEXIS 208280 (D Or Nov. 6, 2020)...............................................................................22

*Tomlinson v. Metro. Pediatrics*, LLC, 275 Or App 658 (2015).......................................20, 21

*Vazquez v. Combs*, 2004 WL 2404224(S.D.N.Y. Oct. 22, 2004) ........................................... 9

*Walden v. Dawson,* No. 6:12-cv-02155-MC, 2014 US Dist LEXIS 158239 (D Or Nov. 7, 2014) ...............................................................................................................16

*White v. City of Tacoma*, 2014 U.S. Dist. LEXIS 5330, 2014 WL 172037 (W.D. Wash. Jan 15, 2014) ........................................................................................................... 9

**Statutes**

42 U.S.C § 1983.................................................................................................22, 23

ORS § 162.415 ............................................................................................................19

ORS § 166.155 ............................................................................................................20

ORS § 166.165 ............................................................................................................20

ORS § 174.109 .............................................................................................................. 6

ORS § 659A.103(1)......................................................................................................14

ORS § 659A.104(1)......................................................................................................13

ORS § 659A.104(1)(c)(A).............................................................................................13

ORS § 659A.104(2)(a)-(aa)..........................................................................................13

ORS § 659A.139(2).......................................................................................................13

ORS § 659A.142 .............................................................................................13, 14, 15, 16

ORS § 659A.142(1)(c)...................................................................................................13

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST, #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

ORS § 659A.142(5) ..................................................................................16

ORS § 659A.400 ...............................................................................7, 8, 15

ORS § 659A.400(1)(a) .............................................................................15

ORS § 659A.400(1)(c)...........................................................................6, 8

ORS § 659A.403 ........................................................................6, 8, 10, 11

ORS § 659A.403(2) ................................................................................. 6

ORS § 659A.411 ......................................................................................15

ORS § 659A.411(3) .................................................................................15

ORS § 659A.415 ......................................................................................15

**Other Authorities**

Hillsboro Municipal Code 7.28.040 A...................................................15

Hillsboro Municipal Code 7.28.060 A-E ..............................................16

Oregon Uniform Civil Jury Instruction 20.02 (2008-2020 supps)..........19

**Rules**

Fed. R. Civ. P. 30(b)(6) ..........................................................................23

Fed. R. of Civ. P. 12(b)(6) ...................................................................... 5

**Constitutional Provisions**

United States Constitution, 13th-15th Amendments ............................20

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST, #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

## INTRODUCTION

Plaintiff Jean Coppedge, an elderly African American woman, called the Hillsboro Police Department (HPD) after being physically assaulted and called racist and sexist slurs by her white neighbors. In response, HPD officers conducted a sham investigation, questioned her credibility and mental health, biased potential witnesses and suspects by suggesting she was mentally ill, intentionally omitted admissions and corroborating statements from the very individuals whom Ms. Coppedge identified as her assailants, blamed Ms. Coppedge for the assault and injuries, and then knowingly generated a false police report in order to get her evicted from her housing. As a result, Ms. Coppedge's landlord evicted her from her home and Ms. Coppedge suffered immense economic and emotional harm. Despite her complaints to HPD and the existence of body camera footage corroborating her story—body camera footage the officers initially denied having—HPD had no concerns about the officers' conduct and found it consistent with its policy.

Defendants bring a Motion to Dismiss every single one of Ms. Coppedge's claims no matter how thin or questionable the grounds. The majority of Defendants' arguments lack citation to any binding legal authority and fail to appropriately consider Plaintiff's factual allegations, if at all, much less construe them in a light most favorable to Plaintiff. Plaintiff asks this Court to deny Defendants' Motion in its entirety as she attempts to end Defendants' continued evasion of consequences for their outrageous and unlawful conduct.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS

Plaintiff Jean Coppedge ("Coppedge") is a 70-year-old African American woman. Third Am. Compl. ("TAC") ¶ 7. On or around May 22, 2019, Ms. Coppedge's white neighbors brought their dog to Ms. Coppedge's home to urinate and defecate on her lawn despite her protests, and then physically assaulted her and called her sexist and racist slurs including [the

PAGE 1 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

n-word] and "bitch." *Id.* at ¶¶ 8, 9. One of the neighbors, Kenneth McConnell, Jr., a white man, had an undisputed history of regularly harassing Ms. Coppedge every time her saw her, including calling Ms. Coppedge sexist and racist slurs. *Id.* at ¶ 13.

In response to the McConnells' physical assault and harassment on May 22, 2019, Ms. Coppedge called the Hillsboro Police Department ("HPD") non-emergency line to report the incident. *Id.* at ¶ 10. Defendant James Schoeffler, a sworn HPD officer, responded. *Id.* Coppedge reported the assault and racial harassment to Defendant Schoeffler, showed him injuries on her arm from the assault, and also told Defendant Schoeffler that McConnell Jr. had been persistently harassing her, calling her names, and yelling the racist slur "[n-word]" at her every time he passed her house. *Id.* at ¶¶ 11, 12.  Defendant Schoeffler responded by asking Ms. Coppedge a series of condescending and harassing questions, expressing his clear skepticism and disbelief, and insinuating she was lying. *Id.* at ¶ 11.

McConnell admitted to Defendant Schoeffler that he regularly harassed and antagonized Ms. Coppedge, and even gave examples of the racist and sexist slurs he used against her. *Id.* at ¶ 13. Despite these admissions, in his interactions with Ms. Coppedge throughout the day, Defendant Schoeffler repeatedly blamed her for her own assault and harassment, including with statements such as, "Jean, Jean, I don't know why you constantly have problems with your neighbors" and "it's like, constantly, constantly, always you, always with your neighbors," and by writing in the official report that Ms. Coppedge had fabricated the assault and inflicted the injuries to herself. *Id.* at ¶¶ 11, 16, 27.

Defendant Schoeffler's treatment of the suspects, McConnell and his adult daughter Britany McConnell, was starkly different and blatantly more favorable. For example, McConnell freely admitted to Defendant Schoeffler during the interview: he called Ms. Coppedge [the n-word] on previous occasions and a "crazy bitch" every time he saw her; he had called Ms. Coppedge "a crazy fucking do-rag bitch"; and openly fantasized about

PAGE 2 – PLAINITFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST, #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

"crack[ing] her [Ms. Coppedge] upside the head". *Id.* at ¶¶ 13, 14, 27. Likewise, Brittany McConnell admitted to Defendant Schoeffler she wrestled Ms. Coppedge, forcibly took Ms. Coppedge's walking stick away from her, and threw the stick in the street. *Id.* Despite these alarming admissions, Defendant Schoeffler remained friendly, respectful, and sympathetic to the McConnells and ignored, misstated, or wholly omitted these statements and admissions in his police report. *Id.* at ¶¶ 14, 26, 27. Instead, Defendant Schoeffler made it clear to the McConnells they would not face consequences or accountability, and disclosed his opinion that Ms. Coppedge was not credible based on his purported familiarity with "her issues" and need for "mental health" services. *See id.* at ¶ 14. Defendant Schoeffler also told the McConnells, "your tax dollars pay for us to deal with problems so you don't have to." *Id.* Defendant Schoeffler made no such assurances to Ms. Coppedge.

Later in the day, Defendant Schoeffler told Ms. Coppedge, "If you're not satisfied with the service, I can have a Sergeant here to talk with you." *Id.* at ¶ 16. Ms. Coppedge agreed. Defendant Chrz, an HPD Sergeant, arrived on scene. *Id.* at ¶ 17. Defendants Chrz and Schoeffler spent extensive time speaking with Ms. Coppedge's other neighbors, Brooklyn Bryant and Robert Bryant, both of whom were white, even after both admitted almost immediately that they were not involved and had not witnessed the incident. *Id.* at ¶ 18. Nonetheless, Defendants Schoeffler and Chrz had an extensive conversation with them, made additional comments about their belief that Ms. Coppedge had "mental issues" and they knew her "very well"; and sympathized with the Bryants' attempts to get Ms. Coppedge evicted. *Id.* at ¶¶ 19, 20. Defendant Chrz then expressly advised and encouraged Brooklyn Bryant to use the police report to obtain Ms. Coppedge's eviction, explaining the process of pulling the police report and telling Bryant that he would direct Defendant Schoeffler to give her Ms. Coppedge's last name to aid with the process. *Id.*

PAGE 3 – PLAINITFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST, #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

Ms. Coppedge raised her concerns with Defendant Chrz about Defendant Schoeffler's statements to neighbors that he knew her very well based on prior police interactions, which Defendant Chrz refused to directly or substantially address. *Id.* at ¶ 22. Ms. Coppedge also raised concerns with Defendant Chrz about him telling Brooklyn Bryant how to request the police report, which Defendant Chrz again refused to address. Ms. Coppedge directly reported fears that the McConnells acted like they could say anything to her, no matter how abusive, because she lives by herself and nobody will help. *Id.* at ¶ 23.

Ms. Coppedge made it clear that she called HPD because she was assaulted, not because of the issue of dogs on her lawn, and informed Defendants of her belief that she and the McConnells were being treated differently, including expressly raising concerns of disparate treatment, that if she had done similar things to the McConnells, the police would already have taken her to jail. *Id.* at ¶ 24. Ms. Coppedge escalated her concerns to HPD Commander Scott Hewetson, who later informed Ms. Coppedge he had reviewed all body camera footage, concluded the documentation was accurate, and that he had no concerns with Defendants Chrz's or Schoeffler's conduct. *Id.* at ¶¶ 31, 32.

In summary, Defendants treated Ms. Coppedge differently and worse than her white neighbors; treated Ms. Coppedge differently from her neighbors whom they did not regard as mentally disabled; knew and advised the Bryants on how to use the report to evict Ms. Coppedge; and produced a sham police report that they knew contained inaccurate, untrue, and mischaracterized information in order to evict Ms. Coppedge. Defendants then took affirmative steps to lie, conceal, or obstruct the truth of their conduct. For example, Defendant Chrz denied knowing why the Bryants wanted copies of the police report despite the police camera video-recorded conversation of Defendant Chrz advising the Bryants on how to use the police report to evict Ms. Coppedge. *See id* at ¶ 20. Moreover, Defendants Schoeffler and Chrz turned off and on their body cameras during the day, and Defendant Schoeffler told

PAGE 4 – PLAINITFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

multiple people he interacted with that they were being recorded—yet Defendants generated and approved a police report stating there was no body camera footage available from any officer on scene. *Id.* at ¶¶ 17, 10, 30.  Defendant City of Hillsboro knew of, condoned, and ratified this conduct. *Id.* at ¶¶ 31, 32, 33, 34, 80, 81, 82.

As a result of Defendants' conduct and the police report they generated, Ms. Coppedge's landlord evicted her from her home, and she was forced to move. *Id.* at ¶ 28.

## II. LEGAL STANDARDS

Fed. R. of Civ. P. 12(b)(6) provides, in relevant part:

> (b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>           * * *
>           (6) failure to state a claim upon which relief can be granted.

Plaintiff's complaint must contain sufficient factual allegations which, when accepted as true, give rise to a plausible inference that relief is warranted on a claim. *Ashcroft v. Iqbal*, 556 US 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 US 544, 556-57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678; *see also Moss v. U.S. Secret Service*, 572 F3d 962, 969 (9th Cir. 2009).

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). The Court must take as true all allegations of material fact, construing them in the light most favorable to the Plaintiffs, and all reasonable inferences from the factual allegations must be drawn in favor of the Plaintiff. *Am. Family Ass'n, Inc. v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002); *Newcal Indus., Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1043 n.2 (9th Cir 2008).

PAGE 5 – PLAINITFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST, #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

## III. ARGUMENT

### A. Plaintiff's First Claim is Cognizable Under ORS § 659A.403.

#### 1. Oregon Statute Defines "Public Accommodation" as Any Service to the Public that is Provided by a Public Body

Defendants argue Plaintiff fails to allege a cognizable claim under ORS § 659A.403 because a police investigation is not a "public accommodation" without relying on or citing any Oregon caselaw or 9th Circuit applicable caselaw. *See* Def's Mtn. at 3. Defendants' argument primarily consists of analogies to the Due Process Clause of the United States Constitution and Washington State law, which are not relevant to the analysis they ask the Court to undertake. Defendants do so because their argument fails based on the plain language of the Oregon statute.

The plain language of Oregon statute recognizes Plaintiff's claim. The text of ORS § 659A.403 expressly provides that "**all persons** within the jurisdiction of this state **are entitled** to the full and equal accommodations, advantages, facilities and privileges of any place of public accommodation, without any distinction, discrimination or restriction on account of race" and other protected classes (emphasis added). Notably, ORS § 659A.403(2) sets out specific exempt definitions of what a place of public accommodation "does not include"—none of which apply here.

The City of Hillsboro's police department services are a public accommodation as defined by Oregon statute. ORS § 659A.400(1)(c) defines public accommodation as: "**Any** service to the public that is provided by a public body [...] **regardless of whether the service is commercial in nature**." (emphasis added). ORS § 174.109 defines "public body" to mean "state government bodies, local government bodies and special government bodies." Defendant City of Hillsboro is a local government body that provides police services to the public. Under the plain language of the statute, Plaintiff has alleged a cognizable claim. While ORS § 659A.403 (2) contains exemptions to the discrimination in public accommodations

PAGE 6 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

statute, none exempt the conduct at issue here, nor do Defendants argue these exceptions apply.

### 2. City of Hillsboro Police Department Services are Indeed a "Service"

While Oregon statute does not specifically define "service," a plain reading of the text must conclude that police department services are indeed a "service." The statute makes clear that "any" service provided by a public body, "regardless of whether the service is commercial in nature," is subject to the law. ORS § 659A.400. In other words, the term includes anything a public entity does. *See, e.g, Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part, cert. dismissed in part sub nom. City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765 (2015) (stating the ADA applies broadly to "police services, programs, or activities" and the terms encompass "anything a public entity does").

Additionally, Defendants themselves characterize their conduct as a "service." For example: HPD's own mission statement is to "deliver[] exceptional **police service** to the Hillsboro community", TAC, ¶ 4 (emphasis added); HPD policy includes a commitment to "provide **police services** and to enforce the law equally, fairly, and without discrimination," *id.* at ¶ 48 (emphasis added); HPD policy prohibits officers from "providing differing levels of **police service** or enforcement of the law" based on protected class, *id.* (emphasis added); and Defendant Schoeffler characterized his own conduct as a "service." *Id.* at ¶ 16.

In arguing police investigations are not actually a "service," Defendants attempt to narrow the plain meaning of the statute while simultaneously admitting no Oregon caselaw supports such limited reading. *See* Def's Mtn. at 3. Defendants instead rely on unrelated and irrelevant Fourteenth Amendment caselaw and a hodgepodge of out-of-state cases that are neither binding nor persuasive on this issue.

/ / /

PAGE 7 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

Defendants' citation to caselaw interpretating the Fourteenth Amendment to the U.S. Constitution is not relevant to whether Oregon's public accommodations statute recognizes Plaintiff's claim. Defendants argue that because the Fourteenth Amendment to the U.S. Constitution does not guarantee a general right to affirmative government aid, police services are not a "service" to which members of the public are entitled. *See* Def's Mtn. at 3-4 (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,* 489 US 189 (1989); *Harris v. McRae,* 448 U.S. 297, 317-18 (1980), *Raynor v. City of Longview,*11 F3d 485 (9th Cir 1997) (unpublished); *Balistreri v. Pacifica Police* Dep't, *901*, F 2d 696 (9th Cir 1988). But this argument by analogy contradicts the plain language of Oregon statute, which expressly defines a "public accommodation" as **any service** provided by a public body, ORS § 659A.400(1)(c) (emphasis added), and expressly provides that "all persons" within the jurisdiction of Oregon **are** "entitled" to full and equal accommodations, including services provided by a public body, *see* ORS § 659A.403; 659A.400. Further, none of Defendant's cited cases address public accommodations or disability discrimination: *Deshany, Raynor,* and *Balistrei* address whether the Due Process Clause imposes upon the government an affirmative duty to protect citizens from harm inflicted by third parties or from crime,[1] while *Harris* addresses whether the Due Process Clause protects government interference with abortion. Such cases address conduct quite distinguishable from the conduct at issue here and are inapplicable.

### 3. Non-Oregon Caselaw is Not Relevant to Whether Plaintiff Has Alleged a Claim Under ORS § 659A.403

Defendants' reliance on out-of-state caselaw is also misplaced. Again, Plaintiff's claim is brought under Oregon statute; there is no statutory basis to exclude the kind of conduct

---

[1] Further, *Deshaney*'s holding that there is no general right to affirmative governmental aid is complicated with several exceptions and deviations in Fourteenth Amendment jurisprudence. *See, e.g., Youngberg v. Romero,* 457 US 307, 371 (1982) (duty to provide certain services and care exists for institutionalized persons); *White v. Rochford*, 592 F2d 381 (7th Cir 1989) (police officers violated the Due Process Clause when they refused minor children aid and left them in the car on the side of the highway after arresting the driver).

PAGE 8 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

Plaintiff alleges. Defendants cite no authority that Oregon's statute was modeled off of Washington's or any other state's public accommodation laws; as such, caselaw interpreting a different state's accommodation statute is neither binding nor persuasive. *See State v. Lewis,* 352 Or 626, 638 n 5 (2012) (considering New York cases persuasive authority when Oregon statute is based on New York statute).

In addition, this Court should not consider an out-of-state caselaw interpreting another state's statute where that statutory language does **not** include the definition of a public accommodation as "any service" provided by a public body. *See Marquard v. New Penn Fin., LLC*, No. 3:17-cv-549-SI, 2017 US Dist LEXIS 155209, at *26-27 (D Or Sep. 22, 2017) (discussing the breadth and unique legislative history of Oregon's public accommodations statutes). For example, *White v. City of Tacoma*, cited in Def's Mtn. at 4, specifically interpreted the Washington Law Against Discrimination, citing a Washington case defining the statute's requirements, and found that plaintiff did not meet those specific requirements because she did not submit evidence that her apartment building is state-owned. *White v. City of Tacoma*, 2014 U.S. Dist. LEXIS 5330, *32, 2014 WL 172037 (W.D. Wash. Jan 15, 2014). The public accommodation statute in *White* did **not** include language like Oregon's defining a public accommodation as "any service" provided by a public body.[2] *Id.*

Defendant's other cases are similarly inapposite. For example:

- *Vazquez v. Combs*, 2004 WL 2404224, at *4 (S.D.N.Y. Oct. 22, 2004) is another New York case alleging conspiracy claim under 42 USC § 1983, with no discussion on public accommodations, discrimination, or state statute. *See* Def's Mtn. at 4;

/ / /

---

[2] Plaintiff also notes that *White* is likely no longer good law with respect to its holding that the Americans with Disabilities Act does not apply to police arrests. *See Lookabill v. City of Vancouver,* 2015 U.S. Dist. LEXIS 101300, *21, 2015 WL 4623938 (W.D. Wash Aug. 3, 2015) ("[T]he Ninth Circuit's holding in *Sheehan*, that the ADA applies to arrests, is still binding on this Court.") (citing *Sheehan v. City & Cty. of San Francisco*, 743 F3d 1211, 1232 (9th Cir 2014).

PAGE 9 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

- *D.H. v. City of New York,* 309 F Supp 3d 52, 81 (S.D.N.Y. 2018) interprets a New York statute, and analyzes whether there was probable cause to arrest, underlying police conduct not present here.  *See* Def's Mtn. at 4;

- *Kansas Comm'n on Civil Rights v. Howard,* 544 P 2d 791, 795 (1975) is a Kansas case interpreting Kansas law, and does not discuss any statutory language expressly including public services—to the contrary, the court specifically noted the question of whether an arrest is a "service" of the police department "need not be decided at this time." *See* Def's Mtn. at 4.

Defendants fail to identify any case examining an out-of-state statute that includes services provided by a public body in its definition of "public accommodation," even though they exist. For example, the Michigan state public accommodations statute includes services provided by a public body in the language of the statute; courts have found police services are indeed covered by the statute. *See, e.g., Shaya v. Belcastro,* 2016 WL 3353921(E.D. Mich. June 10, 2016) (assuming a police department investigation into individual officer misconduct is indeed a "service" provided by the City's police department, stating in a footnote, "The City's police department is a 'public service' as defined by Mich. Comp. Laws § 37.2301(b).") In short, the Court must look to Oregon authority, not Washington, to determine whether Plaintiff has alleged facts sufficient to state a claim under ORS § 659A.403. Based on the plain language of Oregon statute. Plaintiff has done so.

### 4.  Plaintiff Alleged Sufficient Facts to Support Her First Claim Under ORS § 659A.403 Based on Race

ORS § 659A.403 provides in relevant part:

[A]ll persons […] are entitled to the full and equal accommodations, advantages, facilities, and privileges of any place of public accommodation, without any distinction, discrimination or restriction on account of race […]

In interpreting the statute, the Oregon Court of Appeals recognized the statute's prohibition against "distinction, discrimination or restriction" proscribes not just the refusal of services to a person on account of her race, but also "the greater evil of unequal treatment, which is the injury to an individual's sense of self-worth and personal integrity." *Harrington v. Airbnb, Inc.,* 348 F Supp 3d 1085, 1089 (D Or 2018) (citing *King v. Greyhound Lines, Inc.,* 61

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST, #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

Or App 197, 203 (1982)). The key issue is whether Plaintiff was treated differently because of her race and whether that treatment resulted in her suffering harm. *Craig v. US Bancorp*, No. 03-1680-AA, 2004 Dist LEXIS 6987, at \*10-12 (D Or Apr. 14, 2004). The statutory language "on account of" is "unambiguous," and means "by reason of" or "because of." *Klein v. Or Bureau of Labor & Indus.,* 289 Or App 507, 518-9 (2017).

On a motion to dismiss, a plaintiff need only to show a prima facie case of discrimination under ORS § 659A.403. *Harrington.*, 348 F Supp at 1089. To state a prima facie cause, a plaintiff must allege (1) that she was treated unequally because of her race and (2) that she has been injured as a result. *Id.* (citations omitted). Here, Plaintiff has sufficiently alleged facts to show she was treated unequally because of her race and that she has been injured as a result.

First, Plaintiff alleges numerous factual allegations that Defendants treated her unequally because of her race, including:

- Defendant Schoeffler's differential and better treatment of the McConnells, who are both white, SAC at ¶¶ 13, 14, 26, 27;

- Defendants Schoeffler and Chrz differential and better treatment of the Bryants, who are both white, *id.* at ¶¶ 18, 19, 20;

- Defendant Schoeffler responded to Plaintiff's account of racist harassment and physical assault by blaming her for the McConnells' racist harassment and assault, *id.* at ¶¶ 11, 16, 27;

- Defendant Schoeffler omitting or mischaracterizing Kenneth McConnell's admissions that he called Plaintiff racist slurs like [the n-word] and "a crazy fucking do-rag bitch" in his official police report, *id.;*

- Defendant Schoeffler omitting or mischaracterizing Brittany McConnell's admission that she assaulted Plaintiff in his official police report, instead claiming Plaintiff fabricated the assault and her injuries, *id.;*

- Defendant Schoeffler responded to Plaintiff's call for help and report of assault with condescending, disrespectful, and harassing comments undermining her credibility, *id.* at ¶ 11;

PAGE 11 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

- Defendants Schoffler and Chrz's refusal to truthfully address Plaintiff's concerns about the assault, her fears about the McConnells abusing her, and her concern that they were treating her differently than her white neighbors, *id.* at ¶¶ 22, 23, 24;

- Defendants Schoeffler and Chrz's initial attempt to conceal the existence of body camera footage in response to Plaintiff's complaints about their conduct, *id.* at ¶¶ 17, 10, 30;

- HPD Commander Hewetson and Defendant City's condoning and ratification of the above-described conduct, including their failure to adequately respond to Plaintiff's report of assault and racial harassment, failure to investigate Plaintiff's complaints about the officers' conduct, and failure to train or discipline any officer in response, *id.* at ¶¶ 31, 32, 33, 34, 80, 81, 82.

Second, Plaintiff has also alleged numerous factual allegations that she has been harmed as a result of Defendants' conduct, including that she was evicted from her home and suffered emotional distress and economic loss. *Id.* at ¶¶ 28, 39.

That Jean Coppedge has to defend her Complaint on these grounds is yet another appalling example of Defendants' refusal to acknowledge racist conduct and the reality of how racism exists in everyday interactions. Defendants' contention that the "only" allegations in Plaintiff's complaint that support this claim are the facts of Plaintiff's race and McConnell's use of racist slurs is flat-out wrong. *See* Def's Mtn. at 5. The heart of Plaintiff's complaint against Defendants is that they treated her differently and terribly because she is a Black woman with a perceived mental health disability, and they caused her profound harm as a result. If Defendants had treated Jean Coppedge equal to and as well as a white man (like Kenneth McConnell, Jr. or Robert Bryant), or if Defendants had treated Jean Coppedge equal to and as well as a white woman (like Brittany McConnell or Brooklyn Bryant), then she would not have to resort to the legal system to see Defendants held accountable as a result of their conduct.

/ / /

/ / /

PAGE 12 – PLAINITFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

**B. Plaintiff Alleged Sufficient Facts For Her Second Claim Under ORS § 659A.142**

**1.  Plaintiff is Protected Because Defendants Regarded Her as Disabled**

Defendants rely on no authority to argue that Plaintiff must allege "what disability defendants perceived her to have," as though Plaintiff is required to allege that Defendants assigned her a particular diagnosis. *See* Def's Mtn. 6. Oregon Revised Statutes set out specific criteria for who is considered disabled under the statute, and counsels that whether an individual has a disability is to be broadly construed. ORS § 659A.104(1) provides in relevant part that an individual has a disability if that individual "is regarded as having a physical or mental impairment that substantially limits one or more major life activities for the individual." ORS § 659A.142(1)(c). The statute further provides that an individual is "regarded as" having a physical or mental impairment if the individual has been subjected to an action prohibited under the relevant discrimination statutes (including ORS § 659A.142) "whether or not the impairment limits or is perceived to limit a major life activity of the individual." ORS § 659A.104(1)(c)(A). What may be considered a "major life activity" includes but is not limited to activities such as caring for oneself, thinking, concentrating, communicating, socializing, interacting with others, and the ability to rent or maintain property. ORS § 659A.104(2)(a)-(aa). Further, "[t]he determination of whether an individual has a disability […] shall be construed in favor of broad coverage of individuals […] to the maximum extent permitted" by the discrimination statutes. ORS § 659A.139(2).

Here, Plaintiff has sufficiently alleged facts demonstrating Defendants regarded her as having a disability. It is irrelevant whether she actually has such a mental impairment, or if Defendants knew about a particular diagnosis. ORS § 659A.104(1)(c)(A). Defendants' argument that Plaintiff only alleged a "throw-away comment" is inaccurate, Def's Mtn. at 6; Plaintiff alleges numerous examples of Defendants' statements evidencing that they regarded her as having a mental health disability, including questioning her reality, blaming her for her

PAGE 13 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

own assault, baselessly accusing her of fabricating the assault and racist and sexist harassment, accusing her of "pretending to film" and "pretending to talk to somebody on the phone" about her neighbors, telling her neighbors that she has "mental issues" and prior calls to the police, telling her neighbors they would "forward [the matter] to our mental health team", that they would try to involve "mental health officers" to deal with her, refusing to take her complaints seriously, refusing to take any action against the McConnells, getting Plaintiff evicted from her home, and refusing to see any of this conduct as a problem or violation of HPD policies or training. Third Am. Comp. ¶¶ 11, 12, 14, 15, 16, 18, 19, 20, 22, 25, 27, 28, 32, 33, 34.

In other words, based on their perception of her mental impairment, Defendants ignored the evidence and dismissed Plaintiff's credibility, and concluded that Plaintiff's mental impairment limited her ability to think, communicate, to interact with others, and to rent and maintain her home. Such conduct is precisely the type of stereotyping and discrimination of people with mental health disabilities that the law intends to prohibit. *See* ORS § 659A.103(1).

### 2. Plaintiff has Stated A Claim for Relief Under ORS § 659A.142

Oregon has declared it to be public policy of this state to guarantee individuals with disabilities the fullest participation in and receipt of the benefits of the services, programs, and activities of state government without discrimination. ORS § 659A.103(1). ORS § 659A.142 prohibits discrimination on the basis of disability in public accommodations and prohibits state government to discriminate against individuals on the basis of disability. Unlike the federal statute, Oregon statute explicitly defines the term "public accommodation" and that definition on its face is **not** limited to "actual, physical places." *Marquard v. New Penn Fin., LLC*, No. 3:17-cv-549-SI, 2017 US Dist LEXIS 155209, at *26 (D Or Sep. 22, 2017) (internal quotation marks and citations omitted) (emphasis added). Rather, Oregon "explicitly distinguishes between 'places' and 'services' and includes both in its definition." *Id.* (citing ORS §

PAGE 14 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

659A.400(1)(a)). The legislative history supports this broader interpretation of Oregon law, particularly because the Oregon legislature amended the definition of "public accommodation" to include services in 1973—whereas before 1973, the definition had only included a list of places. *Id.* at 27.

Oregon's broad definition of "public accommodations," which includes any service offered by a public body, is referenced in ORS § 659A.142 under which Plaintiff brings her second claim for disability discrimination against Defendants. ORS § 659A.411(3) (Definitions for ORS § 659A.411 through ORS § 659A.415). Defendants seek to narrow the statutory definitions and intent of the anti-disability discrimination statute by arguing Plaintiff has not explicitly alleged she was a "patron" or "customer" of Defendant City of Hillsboro. Def's Mtn. at 7. While Plaintiff is willing to amend her Complaint to explicitly allege this, such explicit allegations are unnecessary to state a claim for relief under the statute, because ORS § 659A.142 specifically prohibits disability discrimination in "public accommodations" which, again, is explicitly defined as any service to the public provided by a public body. ORS § 659A.142; ORS § 659A.400.

Defendants also argue Plaintiff fails to state a claim under ORS § 659A.142 because Defendant City is a municipal corporation and therefore not subject to the statute, arguing that it only proscribes state government and apparently implying that it applies to State of Oregon government agencies only. *See* Def's Mtn. at 7. Defendant City of Hillsboro an instrumentality of the state circumscribed and bound by the laws of the State of Oregon. *See Hillsboro v. PSC*, 97 Or 320 (1920). Defendant City of Hillsboro's City Code and Charter also recognize this. *See* Hillsboro Municipal Code 7.28.040 A ("It is unlawful to discriminate in public accommodations on the basis of an individual's race, religion, color, sex, national origin, marital status, age or disability, by committing any of the acts made unlawful under the provisions of ORS 659A.142 or 659A.400 through 659A.409."). An adoption of Defendants'

PAGE 15 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

argument that municipalities are not covered by the statute would contradict Oregon public accommodations law, the breadth and coverage of which is described above. It would also create a loophole for local government bodies to escape liability for disability discrimination under ORS § 659A.142. *See Walden v. Dawson,* No. 6:12-cv-02155-MC, 2014 US Dist LEXIS 158239, at *17 (D Or Nov. 7, 2014) (summary judgment opinion; assuming Defendant City of Eugene's Police Department was subject to ORS § 659A.142(5)). As such, Defendants' argument should be rejected, and their Motion denied.

To the extent the Court finds that ORS § 659A.142 subsections (4) or (5) do not cover Defendants' conduct, Plaintiff seeks leave to amend her Complaint to add a cause of action under Hillsboro Municipal Code 7.28.060. Hillsboro Municipal Code provides a cause of action to enforce discrimination in public accommodations, providing that enforcement is to be governed by the procedures established in ORS § 659A. Hillsboro Municipal Code 7.28.060 A-E. The municipal code provides that "[a]ny person" will have a cause of action "in any court of competent jurisdiction[.]" *Id.* (subsection E).

### C. Plaintiff's Third Claim for Negligence is Recognized by Oregon Law and Plaintiff has Pled Sufficient Facts for Both Counts.

#### 1. Police can be liable for negligence in investigation

Plaintiff's Complaint alleges two counts of negligence: the first based on Defendants Schoeffler's and Chrz's conduct and the second based on the Defendant City's failure to implement the necessary training, policies, and discipline to prevent and remedy the officers' conduct. Plaintiff's Complaint alleges a myriad of Defendants' failures, including the officers' failure to follow HPD's own policies with regard to offering non-discriminatory services, reporting policies with regard to incidents motivated by hate or prejudice, and truthful and accurate report-writing. *See, e.g.,* Third Am. Compl. ¶¶ 48-51. Defendants narrow Plaintiff's allegations to argue Plaintiff asserted a "negligent police investigation" claim, and then say that because Defendants cannot find any Oregon caselaw on the issue, it is "illustrative of the

PAGE 16 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

fact" that the claim "does not exist" under Oregon law. Def's Mtn. at 8. As described above, Defendants' narrowing of Plaintiff's Complaint is not accurate reflection of the factual allegations.

In addition, and contrary to Defendants' argument, Oregon law recognizes negligence claims based on police conduct—including police investigations. *See Sande v. City of Portland*, 185 Or App 262, 273-4 (2003) (reversing summary judgment in favor of plaintiff on plaintiff's negligence claim based on a police officer's conduct during a police investigation); *Jackson v. Olson*, 77 Or App 41, 46 (1985) (holding the allegations that police officers were negligent in the manner in which they conducted a chase state claims that should be submitted to a trier of fact); *see Adams v. Or. State Police,* 289 Or 233, 241 (1980) (where underlying cause of action is a negligence claim against the Oregon State Police and its failure to record a vehicle towing); *see also Edwards v. State*, 217 Or App 188, 193 (2007) (recognizing a claim for common-law negligence can be based on a negligent investigation by a child protective services worker) (citation omitted).

Here, Plaintiff has alleged sufficient facts for both Counts. As recounted at length in this Opposition, among other things, Plaintiff alleged numerous ways in which officers failed to follow HPD policy, treated Plaintiff differently and worse than her non-Black and non-disabled neighbors, biased witnesses and suspects against her, gave advice to Plaintiff's neighbors on how to evict her, and manufactured a false police report which obtained her eviction. With specific regard to Count 2, Plaintiff alleged that in response to her complaints about the officers' conduct during the investigation, HPD Commander Scott Hewetson informed Plaintiff he investigated the matter and had no concerns about the report or body camera footage, and that HPD recommended no action against the McConnells. Taking Plaintiff's allegations as true, as this Court must, Plaintiff has stated a claim. Plaintiff is further entitled to the reasonable inference that because HPD Command staff reviewed the incident—including the

PAGE 17 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

body camera footage which Defendant Schoeffler initially reported did not exist, as well as

Defendant Schoeffler's report which contained numerous lies and discrepancies—and then

concluded Defendant Schoeffler's documentation was accurate and his conduct appropriate,

Defendant City could have, but failed to, address and correct his conduct.

Defendants also posit unpersuasive policy arguments that are speculative at best.

Defendants' concerns that "a determination by law enforcement that probable cause does not

exist, could give rise to a civil suit" are unwarranted because probable cause—a criminal legal

standard—differs from the civil legal standard for negligence, and in any event, that is not

what Plaintiff argues here. *See, e.g., Sterling v. Albany*, 276 Or 403, 407 (1976) ("It was, of

course, inappropriate for the trial court and the Court of Appeals to treat the question of

probable cause as if it were relevant in a negligence action."). Defendants also express

concern that if Plaintiff's claim survives a Motion to Dismiss, this will "open the floodgates" to

litigation against law enforcement officers and agencies, Def's Mtn. at 8. Plaintiff submits that

a way law enforcement officers and agencies can avoid a "flood" of civil litigation is by simply

complying with the law and not violating people's civil liberties, rather than attempting to limit

the legal mechanisms by which people harmed by law enforcement officers and agencies

seek compensation and accountability.

Defendants also argue Plaintiff's allegations regarding Defendant City of Hillsboro's

Police Department polices do not establish a duty of care and should not establish a standard

of care. Def's Mtn. at 9, 10. But the City of Hillsboro Police Department policies can and

should establish Hillsboro Police Department officers' duty and standard of care. *See Bellikka*

*v. Green*, 306 Or 630, 650-1 (1988) ("Even where a statutory tort is not available, a plaintiff

[…] may be able to use a statute to meet or support one of the elements of his or her claim

[…] in an ordinary negligence action.") (also stating that a statute can be used to establish the

proper standard of care, or indicate standards of care that the defendant should have met);

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST, #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292

*see also Ford v. Ramirez-Palmer (Estate of Ford)*, 301 F3d 1043, 1052 (9th Cir 2002) (stating a correctional officer's "failure to follow prison procedures […] was certainly negligent"); *see also* Oregon Uniform Civil Jury Instruction 20.02 (2008-2020 supps) (Regulations and rules relevant to standard of care).

Law enforcement officers can and should be held to a standard specific to their profession. Law enforcement officers exclusively retain powers and privileges that members of the public, whom they are charged to protect, cannot utilize. *See Conway v. Pacific University*, 324 Or 231, 240 (1996) (a heightened duty of care exists when the party who owes the duty has a "special responsibility" toward the other party). Within our Constitutional framework, officers are entrusted with special authority, including the power and lawful ability to detain someone, use force against someone—including deadly force, and initiate charges against individuals. Acknowledging their outsized power in the community, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Sections 9, 11, and 13 of the Oregon Constitution limit law enforcement authorities as to prevent manifest injustices. Similarly, Oregon law requires Defendants not abuse their powers, and to perform their authorized duties absent intent to harm another. *See, e.g.,* ORS § 162.415.

### 2. Plaintiff Has Alleged Sufficient Facts to Recover for Emotional Distress Damages on her Negligence Claim

Defendants argue Plaintiff's negligence claim for emotional distress damages should be dismissed because she has not sufficiently alleged a physical injury or the existence of a special relationship. Def's Mtn. at 10, 11. Plaintiff has alleged a physical injury: her eviction, which is the forcible dispossession of access to shelter, a basic human need. But even if this Court determines Plaintiff has not alleged a physical injury, Plaintiff has sufficiently alleged a negligence claim for emotional distress damages under multiple cognizable legal theories, including that Defendant "intended to do the painful act with the knowledge that it will cause grave distress, when the defendant's position in relation to the plaintiff causes some

PAGE 19 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

responsibility aside from the tort itself." *Hammond v. Cent. Lane Commc'ns Ctr.*, 312 Or 17, 22-23 (1991) (citations omitted).

Plaintiff need not explicitly allege the term "special relationship" because "[w]hether a relationship is special is driven by the facts" with particular consideration on "the roles that the parties assume in a particular interaction." *Tomlinson v. Metro. Pediatrics*, LLC, 275 Or App 658, 683 (2015). As described above, the Constitution, Oregon law, and HPD policies illustrate expectations and standards for officers' conduct. In addition, here, Plaintiff is an elderly Black woman whom Defendants regarded as mentally disabled. Plaintiff reported racist harassment and assault to the Defendants, and Defendants, law enforcement officers, knew or should have known she was the victim of a potential hate or bias crime. Defendants are obligated to follow the laws and department policies and designed with authority and power unique to their profession. Defendants' role in this interaction with was to ignore, omit, or conceal evidence of the perpetrators' anti-Black racism; undermine Plaintiff's credibility and assure her neighbors and the perpetrators that they would not take her reports seriously; share her personal information without her consent or after promising not to do so; blame her, the victim, for her assault and injuries; and facilitate her eviction.

Plaintiff's legally protected interest to be free from anti-Black racial discrimination should also be considered and valued. *See* United States Constitution, 13th-15th Amendments; *see also, e.g.,* ORS § 166.155; ORS § 166.165; *Nearing v. Weaver,* 295 Or 702, 707 (1983) (holding a plaintiff had established a negligence claim for emotional distress damages where her complaint alleged that police officers refused to respond to her calls of harassment and refused to enforce a restraining order because plaintiff's allegations were sufficient to establish infringement of a legal right by police officers).

Further, Defendants' conduct shows an abuse of power deliberately designed to harm Ms. Coppedge, which is sufficient to state a negligence claim for emotional distress damages.

PAGE 20 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

*See, e.g., Hammond v. Cent. Lane Commc'ns Ctr.*, 312 Or 17, 22-23 (1991) (citing *Brewer v. Erwin,* 287 Or 435, 457 (1979) as an example, with the description: "evidence sufficient to go to a jury on plaintiff's theory that defendants engaged in abusive conduct deliberately designed to frighten or otherwise distress plaintiff").

Defendants' argument regarding the "economic loss doctrine" also fails. *See* Def's Mtn at 11. The economic loss doctrine as it has evolved in Oregon caselaw stands for the proposition that one is ordinarily not liable for negligently causing a stranger's "purely economic loss without injuring his person or property." *Harris v. Suniga*, 209 Or App 410, 416 (2006) (emphasis added).

If a plaintiff's allegations pertaining to noneconomic damages are legally sufficient, then the defendant's motion to dismiss the negligence claim must be denied. *Tomlinson v. Metro. Pediatrics, LLC,* 275 Or App 658, 687 (2015). Here, Plaintiff has sufficiently alleged non-economic damages and her negligence claim is not one involving "purely economic loss." For example, Plaintiff has alleged non-economic injuries and damages such as: severe emotional distress, humiliation, discomfort, fear, and frustration. *See, e.g.,* SAC ¶¶ 28, 39, 72. Defendants acknowledge Plaintiff has alleged a number of emotional distress damages. Def's Mtn. at 11. As described above, Plaintiff has sufficiently alleged a negligence claim for emotional distress damages, and Defendant's Motion to Dismiss should be denied. *Tomlinson*, 275 Or App at 687.

**D. Defendants Are Not Entitled to Absolute Privilege in this Case.**

Defendants' contention that Oregon common law privilege against defamation applies here should be rejected because it is inaccurate and contravenes the purpose of anti-discrimination and civil liberties law. Oregon defamation caselaw, which address statements only, is not applicable to Plaintiff's claims, in which the conduct is part and parcel of her race discrimination and disability discrimination claims. Defendants are not entitled to a shield

PAGE 21 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

which would prevent plaintiffs from holding accountable defendants who engage in discriminatory practices. *See The Puff Factory, LLC v. Port of Cascade Locks,* No. 3:20-cv-65-SI, 2020 US Dist LEXIS 208280, at *15-16 (D Or Nov. 6, 2020) (describing the purpose of Oregon common law litigation privilege "is not to prevent accountability for **any** form of misconduct" stemming from litigation, further stating: "Defendants' argument, if accepted, would prevent potential plaintiffs from holding accountable persons who engage in racially discriminatory contracting practices through legal action.") (emphasis original). The cases on which Defendants rely do not support such an expansive reading of the claimed privilege, which only analyze privilege in the context of defamation and slander claims. Here, Defendants engaged in both comments and conduct to harm Ms. Coppedge and are evidence of bias and motive. As such, in contraction to Defendants' proposition, an absolute privilege applicable in the defamation context should **not** apply with equal weight in this case. Def's Mtn. at 13. It should not apply at all.

**E. Plaintiff Has Stated a Claim for Relief Under 42 U.S.C § 1983.**

Defendants' many unsubstantiated arguments with regard to Plaintiff's Fourteenth Amendment claim appear to rely on the weight of the evidence or the persuasiveness of the legal theory, and are generally unsuitable on a Motion to Dismiss. Plaintiff has sufficiently alleged facts to support a claim that Defendants deprived her from her protected interests secured by the Fourteenth Amendment to the United States Constitution, including but not limited to her ability to live in her home, move freely on the streets, her right to complain about racially discriminatory behavior, and her right to be free from bodily harm and unnecessary pain. Defendants cite no authority to support dismissal of Plaintiff's Fourteenth Amendment claim for Defendants' conduct in intentionally facilitating her eviction. Plaintiff's well-pleaded Complaint clearly states her rights and interests stem from the Fourteenth Amendment, and Plaintiff's allegations that housing is a human right provides context to her claim. Defendants'

PAGE 22 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

argument to dismiss the claim on those grounds should fail. Def's Mtn. at 14.  Plaintiff's

Complaint has also clearly alleged the ways Defendants violated her Constitutional rights,

including allegations specific to the "increased risk and danger" Defendants placed her in.

*See, e.g.,* Third Am. Compl. ¶¶ 69, 70, 71, 72, 75, 76, 77, 78. As such, Plaintiff has sufficiently

alleged facts to defeat this motion.

Defendants also inaccurately argue that an "actual injury" is a "requisite element" to

Plaintiff's Fourteenth Amendment claim. Def's Mtn. at 15. While Plaintiff does not concede she

has not alleged an "actual injury," Defendants' argument that it is a "requisite element" for

Fourteenth Amendment claim is untrue. 42 U.S.C § 1983 provides a civil cause of action for

the deprivation of Constitutional rights. An individual's Constitutional rights can be violated

absent a physical injury. *See, e.g., Leon v. Tillamook Cty. Sch. Dist.,* No. 3:17-440-PK, 2018

US Dist LEXIS 79674 (D Or May 11, 2018) (holding the plaintiff had sufficiently met the

elements of the state-created danger doctrine under the Fourteenth Amendment where no

physical injury occurred). In *Leon,* the relevant inquiry was whether defendants "exposed"

plaintiff to danger; whether the plaintiff suffered an actual physical injury was not part of the

court's analysis. *Id.* at *32-33.

Congress can explicitly deny a remedy by requiring a physical injury if it wanted. For

example, the Prison Litigation Reform Act includes a specific "physical injury" requirement in

order to recover emotional distress damages. However, the courts are clear that an absence

of a physical injury is a limit on damages under the PLRA, and **not a bar to a constitutional

claim.** *See Hernandez v. Bernstein, No.* 3:17-cv-01654-JR, 2018 US Dist LEXIS 97551, at *3

(D Or Apr. 16, 2018). As such, Defendant's Motion to Dismiss should be denied.

### IV. CONCLUSION

In this important civil rights action, Defendants have not met their burden to

demonstrate Plaintiff has not stated a claim under Fed. R. Civ. P. 30(b)(6). The City of

PAGE 23 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT

Hillsboro, Officer Schoeffler, and Sergeant Chrz should be held accountable or at least face some consequence for engaging in discriminatory conduct against Jean Coppedge on account of her race as a Black woman and her perceived disability, and for violating her Constitutional rights.  For the reasons set out above, Plaintiff respectfully requests the Court deny Defendants' motion.

Dated this 4th day of August 2021

**ALBIES & STARK**

_s/Maya Rinta_
Maya Rinta, OSB No. 195058
maya@albiesstark.com
Ashlee Albies, OSB No. 051846
ashlee@albiesstark.com

_Attorneys for Jean Coppedge_

ALBIES & STARK
ATTORNEYS AT LAW
1 SW COLUMBIA ST, #1850, PORTLAND, OR 97204
TEL 503.308.4770 | FAX 503.427.9292